This is a suit to recover the value of several sheep killed by a dog which is alleged to have been harbored by the defendant. The defendant denied that he owned or harbored the dog which killed plaintiff's sheep.
The trial judge dismissed plaintiff's suit, holding that the evidence failed to prove that the defendant owned or harbored the dog that killed plaintiff's sheep. The appeal was taken by the plaintiff from the judgment of dismissal.
The evidence clearly shows that several sheep — one ram and some fifteen ewes with about twelve young or unborn lambs — belonging to plaintiff were killed in the early part of 1941 by a sheep killing dog. While this dog is variously described by the witnesses as reddish, yellow and cream colored, we are satisfied that the identity of the dog that actually killed the sheep has been sufficiently established. The principal question of fact is whether or not the defendant harbored this dog within the meaning of Act 157 of 1934 which renders the owner, harborer or possessor of a sheep-killing dog liable for damages to the owner of the sheep so killed.
The testimony relied on by the plaintiff to prove that the defendant harbored the dog which killed his sheep consists of statements of several witnesses that they had seen this dog following the defendant on several occasions; that they had seen the dog in defendant's truck; that the dog was seen at defendant's house several times; that the dog was seen with defendant's children, and perhaps, the strongest testimony on this point is that of a witness named Couvillier who testified that on one occasion the defendant and his children were at the home of the witness with the dog, and when they left the dog remained, and the children wanted to take him home, whereupon the defendant said, "Let him be, he will come back home later." It was shown, however, that this witness was not on the best of terms with the defendant as the latter had had him arrested, and this fact might have weakened the testimony of this witness to some extent in the mind of the trial judge.
The defendant denied that he either owned or harbored this dog. He testified that some stray dogs would come to his place, but he would run them away as he did not want his children to play with them. He denied that he took the dog around with him in his truck or that his children played with the dog at his home. Two or three witnesses testified that they had been around defendant's place frequently and never saw this dog around there and had not seen defendant with the dog in his truck or following him around. A constable named Little who lived near defendant testified that this dog was a stray or "hobo" dog; that the dog stayed at his place sometimes and at other times he saw the dog on the road; that he had never seen the dog with defendant in his truck around town; that he did see the dog with the defendant when the latter and his children were out working the cattle, and at other times he saw this dog with other people while they were working cattle. Plaintiff's wife came to see Little after she had shut up the dog and it had gotten loose. She told Little that the dog looked somewhat like his dog but was not his dog. She apparently was not sure whose dog it was that killed her husband's sheep.
Plaintiff's counsel stresses the fact that the defendant did not have his wife and children testify in the case and would have the inference drawn from this fact that their testimony would have been unfavorable to him. The defendant testified that his wife was sick and could not come to court. His oldest child is thirteen, and it seems to us that no very strong presumption *Page 282 
could be drawn against him for failing to have this immature child appear in court as a witness.
After all, the question involved is one of fact and the rule that the trial judge is in a better position than we are to pass on the credibility of the witnesses applies here, and we cannot say that he committed manifest error in finding that the evidence did not show that the defendant harbored this dog within the meaning of the above act.
The harborer of a dog within the meaning of the act is equivalent to the keeper of a dog as this latter term is generally understood. To keep or harbor a dog means to give it shelter and food and protect it as an owner or a family ordinarily shelters, feeds, and protects a domestic animal that becomes in a manner a part of the family. There is no evidence that the defendant, or his family, fed and sheltered this dog, which is the usual and customary act of one who keeps a dog.
For the reasons assigned, the judgment appealed from is hereby affirmed at the cost of plaintiff in both courts.